**Nikerray MIDDLEBROOK, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 273, 2000.

Supreme Court of Delaware.

Submitted: April 23, 2002.
Decided: July 15, 2002.

Jerome M. Capone, Esquire, Wilmington, Delaware, for the Appellant.

William M. Kelleher, Esquire, Department of Justice, Wilmington, Delaware, for the Appellee.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

VEASEY, Chief Justice.

In this appeal we consider whether a defendant's constitutional right to a speedy trial was violated by a delay of almost four years between indictment and trial. Such an egregious delay is presumptively prejudicial. In this case, the defendant asserted his right to a speedy trial and demonstrated actual prejudice from the delay in the form of oppressive pretrial incarceration and the impairment of his defense. Contributing to the delay was a lengthy period for deciding a suppression motion, transfer of case assignment among several judges and the granting of eleven continuances, sometimes at the request of the prosecution, sometimes at the request of defense counsel, and sometimes by the trial court sua sponte.

The right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution protects not only the defendant's interests but those of the public, which "is entitled to no less than such steady efforts to see that criminal justice should be swift and certain as may be consistent with the demands of fair and orderly procedure." [1] The egregious delay and the circumstances surrounding it in this case establish a violation of the right to a speedy trial under both the United States Constitution and the Delaware Constitution, either of which independently supports our conclusion.[2] It is well established that the only remedy for violation of the right to a speedy trial is dismissal of the indictment.[3] Consequently, we reverse the sentence for these convictions and remand for dismissal of the indictment.[4]

## Facts

On September 11, 1996, Derrick Homer was shot in the shoulder. Homer called the police and later identified Nikerray Middlebrook as his assailant. Homer testified that Middlebrook attempted to rob him at gunpoint, and that he grabbed Middlebrook's wrist and struggled with him over the gun. Middlebrook then broke free, according to Homer, and shot him in the shoulder before running away. Middlebrook disputed Homer's account of the shooting.[5] Middlebrook testified that he was attempting to purchase drugs from Homer, and they quarreled over the quali-

---

1. *United States v. Mann*, 291 F.Supp. 268, 271 (S.D.N.Y.1968) (cited with approval in *Barker v. Wingo*, 407 U.S. 514, 533 n. 36, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)) ("For an example of how the speedy trial issue should be approached, see Judge Frankel's excellent opinion in *United States v. Mann*, . . . .").

2. *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (recognizing that state law, if separate and independent from federal law, may provide an adequate and independent ground for a state court's decision and that "[i]f the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, ade-

quate, and independent [state law] grounds, we, of course, will not undertake to review the decision").

3. *Barker*, 407 U.S. at 522, 92 S.Ct. 2182.

4. We note that the defendant in this case is serving jail sentences for other convictions. While those sentences are also on appeal to this Court, the appeal is pending and those sentences continue until that appeal is resolved.

5. Middlebrook's recounting of events is taken from his testimony at trial.

ty of the drugs and the fact that Homer believed Middlebrook was responsible for the shooting of Homer's friend some weeks earlier. Middlebrook claimed that both he and Homer pulled out guns, a struggle ensued, and one of the guns accidentally fired, wounding Homer in the shoulder.

Middlebrook was indicted on September 30, 1996 for second degree assault, first degree attempted robbery, two counts of possession of a weapon during the commission of a felony, and various other crimes stemming from the shooting. Almost four years passed before Middlebrook was tried for these charges.[6] The first three trial dates were continued at the State's request on January 27, March 24, and May 5, 1997. In response to the very first continuance, Middlebrook wrote a letter to the trial court protesting the postponement as a violation of his right to a speedy trial.

The next trial date of May 19, 1997, was continued at defense counsel's request because he had a vacation scheduled. On July 10, 1997, Middlebrook wrote another letter to the trial court claiming that the continued postponements violated his right to a speedy trial.

On February 5, 1998, before another trial date was set, Middlebrook, represented by new counsel, filed a motion to suppress Homer's identification of him. The trial court did not decide this motion until May 4, 1999, more than six months after the parties completed their briefing.[7]

On June 11, 1999, trial was set again for August 3, 1999. The docket entry states that, absent exceptional circumstances, the trial court would deny rescheduling or continuance requests. Nevertheless, the trial court shortly thereafter set a new trial date for September 14, 1999 at defense counsel's request because he had a vacation scheduled, despite the fact that his client had been facing criminal charges for over two years.

The September 14, 1999 trial date was continued three times. The first continu-

---

**6.** Clearly this lapse of time is inconsistent with well established speedy trial guidelines. The Chief Justice, with unanimous approval of the Supreme Court, pursuant to Article IV, Section 13 of the Delaware Constitution, has issued Administrative Directives directing the Superior Court to dispose of all criminal cases generally within one year. *See* Administrative Directive Number 82 (May 16, 1990) (implementing recommendations of the Speedy Trial Goal Committee dated April 18, 1990 and directing the Superior Court that "[a]t least 90% of all criminal cases be adjudicated as to guilt or innocence or otherwise disposed of short of sentencing for those to be sentenced after a presentence investigation within 120 days from the date of arrest, 98% within 180 days, and 100% within one year"), superseded and repealed by Administrative Directive 130 (July 11, 2001) (implementing recommendations contained in the Final Report of the Committee on Speedy Trial Guidelines dated November 1, 2000 and directing the Superior Court that "[a]t least 90% of all criminal cases shall be adjudicated as to guilt

or innocence or otherwise disposed of within 120 days from the date of indictment/information, 98% within 180 days, and 100% within one year").

**7.** Clearly this delay is inconsistent with directives requiring early disposition of pending decisions. The Chief Justice, with unanimous approval of the Supreme Court, pursuant to Article IV, Section 13 of the Delaware Constitution, has issued Administrative Directives directing the Court of Chancery, the Superior Court and the Family Court to report to the Chief Justice all matters held under advisement for more than 90 days from submission to decision, to set forth reasons for the delay, and to present a specific plan to decide the matter promptly. *See* Administrative Directive Number 13 (Dec. 31, 1974, Revised March 16, 1981 and Nov. 6, 1987), superseded by Administrative Directive Number 94 (Feb. 1, 1994) (also requiring similar reporting of delays more than 30 days by the Court of Common Pleas and the Justice of the Peace Courts).

ance was due to Hurricane Floyd; the second was at the trial court's initiative; and the third was because of the unavailability of a State witness. Trial was then set for October 4, 1999. The docket entry again stated that, absent exceptional circumstances, the trial court would deny rescheduling or continuance requests. Yet, less than a week later, the trial court canceled that trial date because both the prosecutor and defense counsel had to be in federal court.

The next trial was set for January 4, 2000, but it was canceled at defense counsel's request because he had a vacation scheduled, even though Middlebrook's criminal charges now had been outstanding for more than three years. Yet another trial date was set for February 23, 2000, but it was canceled at the prosecutor's request because he was scheduled to be on his honeymoon.

As of March 31, 2000, this case was the second oldest in the Superior Court, and Middlebrook had been in jail awaiting trial for 1,297 days. By this time Middlebrook's case had been set for trial and postponed eleven times by five different judges.[8]

Finally, trial was set for May 11, 2000. After being continued briefly at the State's request because of witness unavailability due to a death in the family, a four-day jury trial began May 16, 2000, almost four years after Middlebrook's indictment. The jury found him guilty of second degree assault, attempted first degree robbery, and two counts of possession of a weapon during the commission of a felony. The Superior Court sentenced Middlebrook to 38 consecutive years in prison. This is Middlebrook's direct appeal of these sentences.[9]

### Analysis

Middlebrook claims that the three year and eight month delay between his indictment and trial violated his constitutional right to a speedy trial as provided by the Sixth Amendment of the United States Constitution[10] and Article I, Section 7 of the Delaware Constitution.[11]

As far back as the Magna Carta in 1215, a defendant's right to swift justice was fundamental to the concept of fairness in the English legal system.[12] Early in our nation's history, a number of the original states, such as Delaware, Virginia, Maryland, and Pennsylvania, guaranteed the

8. Why five different judges were involved is unclear. We expect in the future that individual case assignments or other improved case assignment and case management procedures will be implemented by the Superior Court to attempt to obviate these problems.

9. Middlebrook initially attempted to proceed pro se through the post-conviction and appellate process. After receiving his opening brief and the State's answering brief, this Court remanded for the appointment of counsel by the Superior Court to assist Middlebrook in his direct appeal. Counsel on appeal was not trial counsel. Appellate counsel has been of significant assistance to this Court, for which we are very grateful. Middlebrook also is serving other sentences that are on appeal to this Court.

10. The Sixth Amendment to the United States Constitution states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . ." U.S. Const. amend. VI.

11. Article I, Section 7 of the Delaware Constitution provides: "In all criminal prosecutions, the accused hath a right to . . . a speedy and public trial by an impartial jury; . . . ." Del. Const. art. I, § 7.

12. *Klopfer v. North Carolina*, 386 U.S. 213, 223–24, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (describing the historical English and state antecedents to the Sixth Amendment to the United States Constitution).

right to a speedy trial in their constitutions.[13] The federal government also recognized the right to a speedy trial in the Bill of Rights through the Sixth Amendment to the United States Constitution. The United States Supreme Court subsequently held that the Sixth Amendment right to a speedy trial is "fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States."[14]

The right to a speedy trial not only helps ensure "that all accused persons [will] be treated according to decent and fair procedures," but also protects society's interest "in providing a speedy trial."[15] "The interests in maximum speed consistent with fairness, in fresh memories likely to approach full accounts of the facts, in prompt vindication and relief of the innocent, and in swift punishment of the guilty ... are matters of broad public moment."[16]

In the seminal case *Barker v. Wingo*, the United States Supreme Court adopted a balancing test to determine whether a defendant's right to a speedy trial has been violated.[17] The *Barker* test weighs both the conduct of the prosecution and the defendant and "compels courts to approach speedy trial cases on an ad hoc basis."[18] The *Barker* Court held that courts should assess four factors in determining whether a particular defendant has been deprived of the right to a speedy trial: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant.[19] None of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Rather they "are related factors and must be considered together with such other circumstances as may be relevant."[20] Because "these factors have no talismanic qualities, courts must still engage in a difficult and sensitive balancing process."[21] Consequently, we will examine each factor in turn.

### Length of Delay

■ The right to a speedy trial attaches as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first.[22] "The length of

13.  *Id.* at 225, 87 S.Ct. 988.

14.  *Barker,* 407 U.S. at 516, 92 S.Ct. 2182 (citing *Klopfer,* 386 U.S. at 223, 87 S.Ct. 988).

15.  *Barker,* 407 U.S. at 519, 92 S.Ct. 2182.

16.  *Mann,* 291 F.Supp. at 274. *See also Key v. State,* 463 A.2d 633, 637 (Del.1983) (stating that "the public has an interest in prompt and certain punishment, ... as part of the fair and expeditious administration of justice").

17.  *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. *See also Fensterer v. State,* 493 A.2d 959, 965 (Del.1985) (marking this Court's first application of the *Barker* test), *rev'd on other grounds,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

18.  *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. *See also Bailey v. State,* 521 A.2d 1069, 1079 (Del.1987) ("What constitutes a speedy trial varies depending upon the facts of the individual case. To determine whether a speedy trial violation has occurred, a court must use a balancing test in which the conduct of both the prosecution and defendant are weighed.").

19.  *Barker,* 407 U.S. at 530, 92 S.Ct. 2182.

20.  *Id.* at 533, 92 S.Ct. 2182. *See also Key,* 463 A.2d at 636 ("Individually, none of these factors is conclusive; they are related ....").

21.  *Barker,* 407 U.S. at 533, 92 S.Ct. 2182.

22.  *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("[I]t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage

delay is to some extent a triggering mechanism [because u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[23] The length of delay that "will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."[24]

The State concedes that the length of delay in this case between the indictment and start of Middlebrook's trial raises the presumption of prejudice to Middlebrook. Indeed, the egregious delay of almost four years between Middlebrook's indictment and trial is, on its face, a cause for considerable concern.[25] Consequently, we find that the first *Barker* factor, length of delay, weighs in favor of Middlebrook.

### Reason for the Delay

■■■ "The flag all litigants seek to capture is the second factor, the reason for delay."[26] Different weights are assigned to different reasons for the delay.[27] Thus, a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State]," while a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily" against the State.[28] Finally, a valid reason, such as a missing witness, may justify appropriate delay and will not weigh against the State.[29]

In this case, the State asserts that the prosecution is directly responsible for only six and a half months of unjustifiable delay, which resulted from the first three continuances and the prosecutor's honeymoon. The State also contends that the prosecution clearly did not intend to hamper the defense through deliberate delay. Nevertheless, most of the delay in this case weighs against the State, including the prosecution and the trial court, because "the ultimate responsibility" for delay caused by overloaded trial courts "must rest with the government rather than with the defendant."[30] Although negligence resulting from overcrowded courts "is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun."[31]

the particular protections of the speedy trial provision of the Sixth Amendment.").

23. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. *See also Skinner v. State*, 575 A.2d 1108, 1115 (Del.1990) ("The threshold question is the length of the delay. Unless there is some delay which is presumptively prejudicial, there is no reason to review the other factors.").

24. *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182.

25. *Cf. Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (noting that lower courts have generally found postaccusation delay presumptively prejudicial as it approaches at least one year).

26. *United States v. Loud Hawk*, 474 U.S. 302, 316, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).

27. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

28. *Id.*

29. *Id. See also Key*, 463 A.2d at 636 (stating that "an event over which the prosecution has no control, e.g., the disappearance or illness of an important witness, supports an appropriate rescheduling of the proceedings").

30. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. *See also Key*, 463 A.2d at 636 ("Yet the responsibility for delays resulting from [negligence, overcrowded courts, or excessive caseloads on prosecutors] properly lies with the State if only because the defendant has no influence over the decisions necessary to reduce a backlog in the courts or the caseloads of individual prosecutors.").

31. *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686.

■ The trial court in this case is responsible for most of a twenty-one month delay. First, the trial court took more than a year to hear and decide Middlebrook's motion to suppress. This is inexcusable. We reject the State's response that the trial court's delay in deciding the motion to suppress should be attributed to Middlebrook because the court was considering a pretrial motion by the defense not the State. The State cites *Bailey v. State* in which this Court stated that the period of time required for the trial court to hear argument and decide the defendant's motion to suppress "cannot be weighed against the State."[32] But, in that case, we considered a total delay of only three months, not a delay of more than a year. While we recognize that swift justice must also be deliberate, we find that six and a half months between final briefing by the parties and a decision by the trial court on a pretrial motion to suppress is too long, particularly given the relatively uncomplicated facts and settled law of the contested identification in this case.[33] Moreover, it is inconsistent with the Administrative Directives of the Chief Justice, unanimously approved by the Supreme Court, setting a goal that matters such as the motion to suppress in this case should be decided within 90 days from submission to decision.[34]

■ Second, the trial court granted three continuances so that defense counsel could take vacations. This resulted in nine and a half months of delay. While the State, of course, did not ask for these continuances, the State and the trial court did not oppose the delay despite the prolonged pendency of Middlebrook's charges. The "unquestioned duty to implement the right to a speedy trial" should be felt by the prosecutor's office and "no less lightly by the judges."[35] "[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest."[36]

As the United States Supreme Court has noted, the *Barker* test "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial."[37] Most of the egregious delay in this case was caused, not by the defendant, but by the prosecution and the trial court, and consequently the State must be held accountable for it. Therefore, we find that the second *Barker* factor, reason for the delay, also weighs in favor of Middlebrook.

### Defendant's Assertion of the Right to a Speedy Trial

■ "If and when a defendant asserts his rights are factors of considerable significance in determining whether there has been a speedy trial violation."[38] Furthermore, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."[39]

Middlebrook asserted at the first opportunity his right to a speedy trial. After his very first trial date was continued at the request of the State, Middlebrook wrote a

---

**32.** *Bailey,* 521 A.2d at 1080.

**33.** Unless the suppression motion presents a novel question of law or the underlying facts are complex, we strongly urge trial judges to dispose of suppression motions through bench rulings which fully explain the factual and legal basis for the ruling.

**34.** *See supra* note 7.

**35.** *Mann,* 291 F.Supp. at 275.

**36.** *Barker,* 407 U.S. at 527, 92 S.Ct. 2182.

**37.** *Id.* at 529, 92 S.Ct. 2182.

**38.** *Bailey,* 521 A.2d at 1082.

**39.** *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

letter to the trial court protesting the continuance as a violation of his right to a speedy trial. After two more continuances at the State's request and a third continuance at the request of defense counsel so that he could take a vacation, Middlebrook again asserted his right to a speedy trial through a letter to the trial court.

Although the second letter was Middlebrook's final assertion of the right to a speedy trial until this appeal, we find that his protest letter after the first continuance combined with his second protest letter fulfilled the defendant's "responsibility to call attention to what he views as an unfair postponement." [40] Trial judges must be sensitive to the need for our courts to provide swift and fair justice. Therefore, we find that the third *Barker* factor, defendant's assertion of the right to a speedy trial, weighs in favor of Middlebrook.

### Prejudice to the Defendant from the Delay

As "everyone knows ... memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." [41] Thus, the prejudice prong should be considered in light of three of defendants' interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. [42] Although Middlebrook raised only the third interest, impairment of his defense, as a claim of prejudice, we shall address all three. [43]

First, lengthy pretrial incarceration "has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." [44] In addition, time spent in jail awaiting trial by one presumed innocent until proven guilty often means loss of a job, disrupts family life, and enforces idleness. [45] "Imposing these consequences on anyone who has not yet been convicted is serious." [46]

Second, "even if an accused is not incarcerated prior to trial, he is still disadvan-

---

**40.** *Key,* 463 A.2d at 637.

**41.** *Mann,* 291 F.Supp. at 271 (citing *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)).

**42.** *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

**43.** *Bailey,* 521 A.2d at 1082 ("The defendant did not raise any arguments under the first two interests[, but w]e shall address all three.").

**44.** *Barker,* 407 U.S. at 520, 92 S.Ct. 2182 (internal quotation omitted).

**45.** *Id.* at 532, 92 S.Ct. 2182.

**46.** *Id.* at 533, 92 S.Ct. 2182. We note also the public interest not only in the trust and confidence in our courts' duty to provide swift and fair justice, but also in the cost to the taxpayers of pretrial detention. The courts are ad-

dressing this issue. *See* Administrative Directive Number 118 (Dec. 1, 1999) (creating the Committee on Speedy Trial Guidelines chaired by Justice Walsh to recommend new guidelines to accelerate the adjudication of criminal cases in the Delaware court system); Administrative Directive Number 128 (April 10, 2001) (creating the Delivery of Criminal Justice Policy Committee chaired by Justice Walsh to formulate statewide criminal justice policy facilitating the adjudication of all criminal cases at the earliest feasible stage); Final Report of the Committee on Speedy Trial Guidelines (Nov. 1, 2000) (stating that "it is essential to the administration of justice and public confidence that criminal cases move through the system as expeditiously as possible"); Final Report of the Delivery of Criminal Justice Policy Committee (Dec. 28, 2001) (detailing recommendations implemented by the Committee to accelerate case processing and to enhance individual court and agency responsibility for detentioners).

taged ... by living under a cloud of anxiety." [47] Although there is no clear record or finding on this issue, Middlebrook was presumptively prejudiced to at least some extent by anxiety and concern regarding the delay of his trial.

Finally, we review whether Middlebrook's defense at trial was impaired by the delay. This type of prejudice, while not the only type recognized by the Sixth Amendment, is "the most serious ... because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." [48] Not only is impairment of a defendant's defense the most serious type of prejudice, but also it is "the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" [49] Furthermore, "whether the delay has hurt the defense, ... is not a point to be resolved with mathematical certainty." [50]

The State claims that Middlebrook's defense was not prejudiced by the delay of almost four years because he has not demonstrated that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence. But, the State ignores the fact that, during the inordinate delay, witnesses' memories presumptively faded, and Middlebrook lost contact with an alleged exculpatory witness who moved out-of-state. During this delay, Middlebrook also was convicted and sentenced to prison on a set of unrelated charges stemming from another shooting. Those sentences have been appealed on other grounds and are now pending review by this Court. Nevertheless, the conviction on those other charges was used against Middlebrook when he testified at trial in this case. Consequently, we find that Middlebrook's defense in this case was compromised by the egregious pretrial delay.

Thus, the fourth factor of the *Barker* test, prejudice to the defendant, also weighs in favor of Middlebrook because of his disturbingly long pretrial incarceration, the attendant anxiety and concern, and the unrebutted presumption that his defense was impaired by the egregious pretrial delay of 1,312 days. Having found that each of the four *Barker* test factors weighs in favor of Middlebrook, we hold that the egregious pretrial delay of almost four years violated Middlebrook's right to a speedy trial guaranteed both by the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Delaware Constitution.

### Conclusion

The only remedy for violation of the right to a speedy trial is dismissal of the indictment.[51] Accordingly, the judgment of the Superior Court is **REVERSED** and **REMANDED** for dismissal of Middlebrook's indictment in this case.[52]

47. *Barker*, 407 U.S. at 533, 92 S.Ct. 2182.

48. *Id.* at 532, 92 S.Ct. 2182.

49. *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182).

50. *Mann*, 291 F.Supp. at 273.

51. *Barker*, 407 U.S. at 522, 92 S.Ct. 2182. Because Middlebrook's speedy trial claim alone merits and requires dismissal of his indictment, we need not address Middlebrook's other claims regarding trial error raised on appeal.

52. As we have noted several times throughout this opinion, Middlebrook will remain incarcerated despite our decision in this case.

Middlebrook has an outstanding thirty-seven-year sentence for a set of unrelated convictions. *State v. Middlebrook,* Del.Super., Cr. A. No. IN96–09–1119 through 1122 and 1795 (June 12, 1998). Middlebrook formally noticed an appeal of the Superior Court's judgment in that case. This Court scheduled that appeal for decision on briefs on January 29, 2002, but stayed its decision on February 4, 2002 pending disposition of the case at bar.