ANDRE L. BRODIE, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 38, 2008.
Supreme Court of Delaware.
Submitted: October 30, 2008.
Decided: January 26, 2009.
Before BERGER, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 26th day of January 2009, it appears to the Court that:
(1) Defendant-Appellant Andre Brodie appeals from his Superior Court convictions of kidnapping first degree, kidnapping second degree, two counts of robbery first degree, burglary second degree, assault second degree, using a disguise during the commission of a crime, conspiracy second degree, and six related counts of possession of a firearm during the commission of a felony. Brodie argues that the court abused its discretion by not granting his motion in limine to preclude the State from introducing DNA results into evidence. Instead, the court granted a trial continuance which, according to Brodie, resulted in a violation of his right to a speedy trial. We find no merit to his argument and affirm.
(2) On April 26, 2003, two men wearing ski masks and batting gloves and brandishing handguns broke into Rafael Perez's apartment. They duct-taped Perez's hands behind his back, demanded money from him, and demanded to know the whereabouts of Andre Huggins, a friend of Perez. Later, another friend of Perez, Rasheen Bowers, came to the apartment and was also duct taped and held hostage with Perez for several hours. Fearful that his captors would kill him, Perez eventually loosened his bindings, pushed one gunman into the other, and broke through the large window in his living room, breaking the glass and jumping to the ground from his fourth floor apartment. The intruders were not immediately apprehended, but police discovered a discarded ski mask on the floor near Perez's apartment and a partially-used role of duct tape in the apartment.
(3) The same day as the incident at Perez's apartment, a security guard at a nearby business noticed a suspicious car parked on its property and took down the license number. Wilmington police traced the vehicle to a woman in Chester, Pennsylvania and requested any police agency encountering the vehicle to stop it. Four days later, police in Eddystone, Pennsylvania did so and arrested the driver, Andre Brodie. Brodie admitted the car was his, but denied being in Delaware on April 26. After taking possession of and searching the car, police found a roll of duct tape in the trunk similar to that found in Perez's apartment and a receipt for two pairs of batting gloves, purchased the day before the incident. A search of Brodie's home pursuant to a warrant yielded a pair of batting gloves and a pair of boots similar to Perez's description of boots worn by one of the gunmen.
(4) The ski mask recovered from the scene was sent to the Delaware Medical Examiner's Office for analysis in June 2003, along with blood and hair samples obtained from Brodie. In March 2005, nearly two years after the incident at Perez's apartment, the Medical Examiner notified police that Brodie was a contributor to DNA found on the ski mask. Commenting on the nearly two-year delay at trial, the forensic analyst who tested the evidence testified that she became a case analyst in November 2004 and began the examination of the evidence in the Brodie case in January 2005. She opined that the delay may have been due to the fact that when police submitted the evidence no arrest had been made and no trial date had been set; hence, the case would have been assigned a low priority.
(5) On May 2, 2005, Brodie was indicted on nearly thirty charges, including kidnapping, robbery, burglary, assault, and various weapons offenses. On May 4, a Rule 9 warrant was issued for his arrest; however, Brodie, who lived in Chester, Pennsylvania, was not arrested until January 12, 2007. Bail was set at $95,000, which Brodie could not post and he was detained awaiting trial.
(6) On February 9, 2007, Brodie's counsel served a discovery request on the prosecutor, and on February 22, the State sent defense counsel a letter stating that "results or reports of ... scientific tests or experiments ... [h]ave been requested. Discovery to the extent permitted or required under [Rule 16] will be made upon receipt of the same. Please note that DNA testing has been performed regarding this case." On March 1, the Superior Court issued a scheduling order setting the trial date for May 30, 2007. On the day of trial, the State requested a continuance because the prosecutor had another trial scheduled for the same day; Brodie's trial was rescheduled for July 10, 2007.
(7) On June 20, 2007, the State provided defense counsel with a six-page report from the Medical Examiner, dated March 20, 2005. The report concluded that the DNA found on the ski mask was consistent with the samples provided by Brodie. The report came just three days before defense counsel began a previously-scheduled two week out-of-state vacation, from which he was scheduled to return on July 9, the day before trial. Prior to leaving, defense counsel met with Brodie once to discuss the disclosure of the DNA evidence.
(8) On July 5, 2007, defense counsel filed a motion in limine to preclude the State from introducing the results of the DNA testing at trial, alleging that the State's disclosure was untimely under Rule 16. The State conceded it had not provided the report, but explained that it was not in the prosecution file and emphasized that it had notified defense counsel in February that DNA testing had been performed in the case. The State opposed the exclusion of the evidence and recommended, instead, that the court grant a continuance to provide defense counsel with additional time to prepare. The court denied the defense motion and, on July 10, rescheduled Brodie's trial to September 19, 2007.
(9) A four-day trial commenced as scheduled, and a jury found Brodie guilty of kidnapping first degree and second degree, two counts of robbery first degree, one count of burglary second degree, one count of assault second degree, using a disguise during the commission of a crime, conspiracy second degree, and six counts of possession of a firearm during the commission of a felony. On December 21, 2007, Brodie was sentenced to 33 years at Level V, suspended after serving 27 years mandatory imprisonment for decreasing levels of supervision.
(10) Brodie contends that the Superior Court erred in denying his motion to exclude the DNA evidence due to the prosecutor's tardiness in providing the defense with the DNA analysis report. Brodie argues that the additional delay violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution[1] We review the Superior Court's denial of a motion to suppress evidence after an evidentiary hearing, as well as the court's application of sanctions under Rule 16 for abuse of discretion.[2] The alleged denial of the constitutional right to a speedy trial is a question of law, which we review de novo.[3]
(11) Superior Court Criminal Rule 16(d)(2) provides the Superior Court with a variety of sanctions to remedy a discovery violation.[4] The rule sets forth four alternative sanctions: (1) order prompt compliance with the discovery rule; (2) "grant a continuance"; (3) "prohibit the party from introducing in evidence material not disclosed"; or (4) such other order the court "deems just under the circumstances."[5] In his pre-trial motion, the only sanction Brodie requested for the prosecution's late discovery disclosure was to prohibit the State from introducing the DNA evidence.
(12) We noted in Snowden v. State,[6] that "in determining the question of whether sanctions should be imposed, the trial court should weigh all relevant factors, such as the reason for the State's delay and the extent of prejudice to the defendant." Brodie asserts that the trial court abused his discretion in weighing these relevant factors, and rather than continue the trial to allow his counsel the opportunity to review the report, the court should have precluded the evidence. His only contention is that the additional delay resulting from the continuance violated his right to a speedy trial guaranteed by the United States and Delaware Constitutions.
(13) In Barker v. Wingo,[7] the United States Supreme Court created a four-factor balancing test to determine whether a defendant had been denied his Sixth Amendment right to a speedy trial. The test considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay.[8] Brodie argues that he was denied his right to a speedy trial because his trial, initially scheduled for May 30, 2007, was continued twice at the behest of the State, until September 19, 2007nearly four months after his initial trial date, eight months after his arrest, and two and a half years after he was indicted.
(14) The first Barker factor considers the length of the delay. "The right to a speedy trial attaches as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first."[9] As we explained in Dabney v. State,[10] this period "is the trigger which necessitates the consideration of the other three Barker factors. `[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance.'" Although Brodie focuses only on the four month period between his initial trial date of May 30 and his actual trial date of September 19, in our review of speedy trial claims we are compelled to consider the entire period from indictment or arrest.[11] Moreover, if our review was constrained only to Brodie's suggested timeframe, his claim would not warrant further consideration.[12] Here, although Brodie's trial began only eight months after his January 12, 2007 arrest, nearly two and a half years elapsed between his indictment on May 2, 2005 and his trial on September 19, 2007. This delay compels our consideration of the other three Barker factors.[13]
(15) The second Barker factor examines the reason for the delay. Here, a significant portion of the period between Brodie's indictment and trial is attributable to the delay in arresting Brodie, who lived outside of Delaware. Once he was arrested on January 12, 2007, Brodie's trial was scheduled 138 days later, on May 30. The State then requested two continuances, both of which were granted. The first was requested because the prosecutor was scheduled for another trial the same day, and the trial was rescheduled for July 10179 days after Brodie's arrest. The second was suggested by the State because the State failed to promptly disclose the Medical Examiner's report regarding the DNA evidence, and the trial was rescheduled for September 19249 days after Brodie's arrest.
(16) Brodie argues that, by virtue of the continuances, the delay in bringing him to trial was solely attributable to the State and, as a result, this factor weighs heavily against the State. This argument is without merit. Assuming, for the moment, that the State's continuances were the sole reason for the delay in Brodie's trial, there is no evidence that either continuance was a deliberate or bad faith attempt by the State to hamper Brodie's defense.[14]
(17) Moreover, Brodie's argument ignores that he was a fugitive for twenty of the twenty-eight months that elapsed between his indictment and trial. Brodie was an out-of-state fugitive and has not alleged that the State failed to exercise reasonable diligence in attempting to locate and arrest him. Therefore, the nearly two year period in which Brodie managed to evade arrest should not be counted against the State.[15] Balancing Brodie's accountability for more than 70% of the delay against the State's requested continuances, this factor weighs heavily against Brodie.
(18) As to the third Barker factor, Brodie did not specifically demand a speedy trial under the United States or Delaware Constitutions, or even remind the State or court of the speedy trial guidelines. Defense counsel did, however, object to the further continuance of the trial at the hearing on the motion to exclude the State's DNA evidence, indicating that Brodie was "adamant" about going to trial.
(19) The United States Supreme Court has emphasized that the defendant's lack of protest or failure to assert the right to a speedy trial will make it difficult to prove that he was denied the right.[16] However, rather than adopt a strict demand-waiver rule, the Court crafted a rule that
[A]llows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.[17]
(20) Moreover, by allowing courts the discretion to weigh the frequency and force of the defendant's assertion, the third Barker factor is more than a mere yes or no inquiry. It is, in fact, a barometer of how serious the deprivation is to the defendant. In that spirit, the Supreme Court in Barker provided the following guidance on how courts should utilize this factor:
Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.[18]
(21) In accordance with the teaching of Barker, in Dabney, we held that the specific words "right to a speedy trial" need not be used to preserve the defendant's right. Instead, we explained that "[o]nce an objection is made and the trial judges are thereby focused on the issue, repeated incantations demanding a trial are not required or even contemplated by our State's speedy trial guidelines or by the federal and Delaware constitutions."[19] Because the defendant in Dabney had never acquiesced in any delay, we found that he preserved his speedy trial argument before the Superior Court because all parties and the court should have been aware of the speedy trial issue and mindful that the defendant remained incarcerated while the trial was continued.[20] Nevertheless, while acknowledging the implied assertion of his right, we found the defendant's vague assertion weighed against him.[21] Similarly, here, while Brodie did not use the term "right to a speedy trial," he did object to the further continuance of the trial, thus preserving his speedy trial argument. However, as in Dabney, while Brodie's indirect assertion avoids waiver, his vague objection weighs against him.
(22) With the fourth Barker factor, we examine the prejudice resulting to the defendant from the delay. In doing so, we evaluate "three of [the] defendant's interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[22] In addition to his pretrial incarceration, Brodie contends that the dilemma of whether to go to trial unprepared to meet DNA evidence or suffer additional delay through the continuance caused him anxiety and concern. He also argues that because the State was able to present critical DNA evidence, the delay impaired his defense.
(23) "Being incarcerated is inherently prejudicial."[23] Therefore, Brodie has established that he suffered prejudice by the mere fact that he was incarcerated for four additional months awaiting trial. However, Brodie's additional claim that his defense was impaired is without merit. Although the Supreme Court explained in Barker that "the most serious [of these interests] is the last," the Court's concern in that case was based on the effects of delaythe death or disappearance of witnesses, memory loss, and dissipation of evidencenot the use of admissible evidence.[24] Brodie's counsel was put on notice of the existence of DNA evidence by the February 22, 2007 response to his discovery requests. While the prosecution should have produced it, defense counsel could have moved under Superior Court Rule 16 to compel its disclosure upon the failure of the State to do so. Because defense counsel was unprepared to deal with the DNA evidence in the case upon the production of the report, Brodie's defense actually benefited from the continuance. Accordingly, while Brodie suffered some prejudice from his pretrial detention, his defense was not impaired. This factor weighs only slightly in his favor.
(24) On balance, there was no violation of Brodie's Sixth Amendment right to a speedy trial under the circumstances of this case. The twenty-eight month delay was largely attributable to Brodie, who was not severely prejudiced by the delay and only indirectly asserted his speedy trial right through a vague objection to the further continuance of the trial. Accordingly, the Superior Court did not abuse its discretion in denying Brodie's motion in limine.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] See U.S. CONST. amend. VI., which provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." See also DEL. CONST. art. I, § 7 (same).
[2] Culver v. State, 956 A.2d 5, 10 (Del. 2008); Brown v. State, 897 A.2d 748, 752 (Del. 2006); McAllister v. State, 807 A.2d 1119, 1122-23 (Del. 2002).
[3] Dabney v. State, 952 A.2d 159, 163 (Del. 2008); Culver, 956 A.2d at 10; Keyser v. State, 893 A.2d 956, 961 (Del. 2006); McAllister, 807 A.2d at 1122-23.
[4] SUPER. CT. CRIM. R. 16(d)(2).
[5] Id.; see also Brown, 897 A.2d at 752; Doran v. State, 606 A.2d at 743, 745 (Del. 1992).
[6] 677 A.2d 33, 39 (Del. 1996); see also Brown, 897 A.2d at 752; Doran, 606 A.2d at 745 n.3.
[7] 407 U.S. 514, 530 (1972). This Court adopted the Barker analysis in Johnson v. State, 305 A.2d 622, 623 (Del. 1973).
[8] Barker, 407 U.S. at 530-31; accord Dabney, 953 A.2d at 163; Page v. State, 934 A.2d 891, 896 (Del. 2007); Middlebrook v. State, 802 A.2d 268, 273 (Del. 2002); Skinner v. State, 575 A.2d 1108, 1115 (Del. 1990); Johnson, 305 A.2d at 623. None of the factors are necessary or sufficient. Barker, 407 U.S. at 533.
[9] Middlebrook, 802 A.2d at 273 (citing U.S. v. Marion, 404 U.S. 307, 320 (1971))
[10] 953 A.2d at 164 (quoting Hughey v. State, 522 A.2d 335, 341 (Del. 1987)); accord Barker, 407 U.S. at 530.
[11] Barker, 407 U.S. at 530; Marion, 404 U.S. at 320.
[12] Hughey, 522 A.2d 335 (finding ten month delay "was not presumptively prejudicial or sufficient to trigger an inquiry into the remaining three Barker factors").
[13] See Dabney, 953 A.2d at 165 (noting delay in excess of one year between arrest and trial compels review of other factors); Skinner, 575 A.2d at 1116 (noting State conceded that delay of nearly a year was "facially sufficient to provoke inquiry into the remaining factors"); accord Doggett v. U.S., 505 U.S. 647, 651 n.1, 658 (1992) (observing that most courts find a post-accusation delay "presumptively prejudicial" at least as it approaches one year).
[14] Barker, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.").
[15] See State v. Korotki, 418 A.2d 1008, 1013 (Del. Super. Ct. 1980) (finding delay not attributed to State when defendant is nonresident and, therefore, not subject to legal process to compel his appearance before the Delaware courts). Cf. U.S. v. Dent, 149 F.3d 180, 184 (3d Cir. 1998) (finding defendant responsible for portion of pre-trial delay spent as a fugitive); U.S. v. Vigille, 2008 WL 5158738 (11th Cir. Dec. 10, 2008) (finding 16 month delay between indictment and arrest did not weigh against State because police diligently attempted to locate defendant).
[16] Id. at 532; Middlebrook, 802 A.2d at 275; Key v. State, 463 A.2d 633, 637 (Del. 1983).
[17] Id. at 528-29.
[18] Id. at 531-32.
[19] Dabney, 953 A.2d at 168.
[20] Id. at 167-68.
[21] Id. at 168.
[22] Id.; Middlebrook, 802 A.2d at 276.
[23] Id. at 168. See Middlebrook, 892 A.2d at 276-77, and Barker, 407 U.S. at 532-33, for a discussion on the various disadvantages of pretrial detention.
[24] Barker, 407 U.S. at 532.