IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN SERVICE, | § | |
| | § | No. 299, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1302012587 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: February 11, 2015
Decided: March 17, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VAUGHN**, Justices.

***O R D E R***

On this 17th day of March 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Stephen Service appeals from a Superior Court order denying his motion to exclude drug test results from evidence at trial. He contends that the State's production of the results was untimely under the Superior Court's scheduling order. He further contends that his right to a speedy trial under the Sixth Amendment of the United States Constitution was violated and that the indictment should have been dismissed under Superior Court Criminal Rule 48(b). We find that the Superior Court acted within its discretion in denying Service's motion to exclude the test results, and that Service has failed to show sufficient

1

prejudice resulting from the delay between his arrest and trial. Accordingly, we affirm the judgment of the Superior Court.

(2) On February 27, 2013, Service was arrested for selling drugs to undercover police officers. On May 28, 2013, Service was indicted on, *inter alia*, multiple counts of drug dealing (the "Drug Dealing Case"). At the time he was indicted on the drug offenses, he also had charges pending against him from an unrelated firearms offense (the "Firearms Case"). Service was incarcerated while awaiting trial in both the Drug Dealing Case and the Firearms Case. The Superior Court scheduled the Drug Dealing Case for final case review on October 21, 2013, and trial on October 29, 2013.

(3) On October 18, 2013, Service requested that his final case review and trial date in the Drug Dealing Case be rescheduled because a motion to suppress remained pending. The trial court granted Service's request and issued a new scheduling order setting final case review for December 2, 2013, and trial for December 10, 2013. The new scheduling order informed the parties that if the Medical Examiner's reports were not filed by the Friday before the final case review, the drug test results would be inadmissible at trial. On December 2, 2013, the trial court performed a final case review in the Drug Dealing Case. On December 4, 2013, the State requested that the Drug Dealing Case trial be moved to December 17, 2013, and that the Firearms Case trial, which was scheduled for December 17, be moved to December 10. The trial

court granted the State's request.

(4) On December 12, 2013, the State provided Service with the laboratory reports for the drug testing at issue in this appeal. On the morning of December 17, 2013, the date trial was set to commence on the Drug Dealing Case, the State offered Service a plea agreement. That same morning, Service filed a motion to exclude the laboratory reports as untimely under the trial court's scheduling order. The State conceded that the laboratory reports were not produced in a timely manner, but argued that Service was not prejudiced because he had notice that forensic testing was necessary before the drugs could be admitted and that a medical examiner was going to testify at trial.

(5) As an alternative to exclusion, the State requested that the trial court grant a continuance to allow Service additional time to prepare his defense and consider the State's plea offer. The State emphasized that, even if the laboratory reports were excluded, Service would remain incarcerated on the Firearms Case. In response, Service's counsel took the position that the laboratory reports should be excluded as untimely, but if exclusion was not granted, she would need a continuance in order to analyze the reports and prepare for trial. She also informed the trial court that Service did not want a continuance, and wished to proceed immediately to trial. After hearing the parties' arguments, the Superior Court reserved decision on the motion to exclude

the laboratory reports and granted the continuance.[1]

(6) On January 6, 2014, Service rejected the State's plea offer. Three days later, Service's counsel filed a motion to withdraw. The trial court granted the motion on January 31, 2014, and counsel from the Public Defender's office was appointed to represent Service.

(7) On February 17, 2014, Service was reindicted, and the Drug Dealing Case and the Firearms Case, which had not yet gone to trial, were consolidated. On February 24, 2014, the trial court issued a scheduling order setting trial for May 13, 2014. On April 4, 2014, the trial court denied Service's motion to exclude the drug test results,[2] and granted a motion filed by Service to sever the charges stemming from the Firearms Case. On the eve of the Drug Dealing Case trial, Service filed a motion to dismiss the indictment on the grounds that his right to a speedy trial had been violated. The trial court denied Service's motion, reasoning that (1) the length of the delay was not extensive, (2) most of the delays were at the defendant's request (3) the defendant had consented to, or at least concurred with the court's reasoning

---

[1] The request for continuance was marked as a "mutual request by State and Defense" on the trial court's docket. Appellant's Op. Br. App. at A4.

[2] Appellant's Op. Br. App. at A57 ("I want to dispose of that motion forthwith . . . because that motion . . . was predicated upon an allegation of late discovery of a medical examiner's report . . . . And essentially, the motion, whatever its merits at the time, it was filed because the trial date was bumped that day for reasons unrelated to the motion or the discovery. Any prejudice that [Service] may have suffered as a result of the allegation of late discovery was mooted out by other circumstances.").

4

regarding the December 17, 2013 continuance, and (4) the delay had benefitted the defendant.

(8) A jury trial in the Drug Dealing Case was held on May 13 and 14, 2014. The jury found Service guilty of three counts of Drug Dealing. He was sentenced to four years of imprisonment followed by descending levels of probation. This appeal followed.

(9) "We review a trial judge's application of the Superior Court Rules relating to discovery for an abuse of discretion."[3] "'When an act of judicial discretion is under review the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his [or her] judgment was based on conscience and reason, as opposed to capriciousness or arbitrariness.'"[4] "The alleged denial of the constitutional right to a speedy trial is a question of law, which we review *de novo*."[5] A trial judge's decision to dismiss or not to dismiss an indictment under Superior Court Criminal Rule 48(b) is reviewed for abuse of discretion.[6]

(10) Service's claim is comprised of three individual arguments. First, he contends that the trial court abused its discretion by failing to enforce the terms of its

[3] *Oliver v. State*, 60 A.3d 1093, 1095 (Del. 2013) (citing *Hopkins v. State*, 893 A.2d 922, 927 n.5 (Del. 2006)).
[4] *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1106 (Del. 2006) (quoting *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968)).
[5] *Brodie v. State*, 2009 WL 188855, at *3 (Del. Jan. 26, 2009) (citing *Dabney v. State*, 953 A.2d 159, 163 (Del. 2008)).
[6] *State v. Fischer*, 285 A.2d 417, 418-19 (Del. 1971).

scheduling order. Second, he contends that his constitutional right to a speedy trial was violated, and thus, the trial court erred by not dismissing his case. Finally, he contends that the trial court abused its discretion by not dismissing his case under Rule 48(b). We will address each of these arguments in turn.

(11) As to Service's first argument, it is well settled that "[a] trial judge has broad discretion to control scheduling and the court's docket."[7] "The trial court's resolution of pretrial scheduling issues will only be disturbed on appeal if there has been an abuse of discretion."[8] Moreover, Superior Court Criminal Rule 16(d)(2) provides the Superior Court with a variety of sanctions to remedy a discovery violation.[9] Rule 16(d)(2) allows the Superior Court to "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."[10] "In determining the question of whether sanctions should be imposed, the trial court should weigh all relevant factors, such as the reason for the State's delay and the extent of prejudice to the defendant."[11] "The trial judge has broad discretion to fashion the appropriate sanction for a discovery violation . . .

---

[7] *Goode v. Bayhealth Medical Center, Inc.*, 2007 WL 2050761, at *3 (Del. Jul. 18, 2007) (citing *Valentine v. Mark*, 873 A.2d 1099 (Del. 2005)).
[8] *Coleman*, 902 A.2d at 1107.
[9] Super. Ct. Crim. R. 16(d)(2).
[10] Super. Ct. Crim. R. 16(d)(2).
[11] *Taylor v. State*, 982 A.2d 279, 283 (Del. 2008) (citing *Snowden v. State*, 677 A.2d 33, 39 (Del. 1996)).

[including the] discretion to cure the violation, if possible, rather than exclude the evidence."[12] The sanction should "balance the needs of society with the defendant's right to a fair trial."[13] Despite the broad discretion a trial court is granted to manage discovery, Service contends that the trial court had no choice but to exclude the laboratory reports as untimely under its scheduling order. He argues that failure to do so constituted an abuse of discretion and requires reversal. We disagree.

(12) A scheduling order is a tool of efficiency that is designed to assist the trial court in managing the flow of the case. Although the terms of a trial court's scheduling order are binding as to parties,[14] the trial court is not equally bound. The trial court may exercise discretion in determining whether to disregard certain terms of a scheduling order when it deems appropriate. Here, the trial court weighed the parties' arguments for and against excluding the laboratory reports and determined that a continuance was the more appropriate choice of remedy with respect to both parties. This decision did not cause Service any significant prejudice, and a review of the record reveals that the remedy was entirely appropriate under the circumstances. The continuance allowed Service an opportunity to review the

---

[12] *Cabrera v. State*, 840 A.2d 1256, 1263 (Del. 2004).

[13] *Id.* (citing *Seward v. State*, 723 A.2d 365, 374 (Del. 1999) (internal quotations omitted)).

[14] *Jackson v. Hopkins Trucking Co. Inc.*, 2010 WL 3397478, at *3 (Del. 2010) ("Parties must be mindful that scheduling orders are not merely guidelines but have full force and effect as any other order of the [Superior] Court.").

laboratory reports and prepare a proper defense. It also gave Service additional time to consider the State's new plea offer. The trial court considered each of these factors and properly remedied the State's violation. Thus, we find that the trial court acted within its discretion by denying the severe remedy of exclusion in favor of relief that permitted Service a full and fair opportunity to review the State's evidence and prepare a defense.

(13) Service's second argument is that his constitutional right to a speedy trial was violated. The right to a speedy trial attaches as soon as the defendant is arrested or indicted, whichever occurs first.[15] "The length of delay is to some extent a triggering mechanism" because until there is a "delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[16] If we determine that the length of delay was presumptively prejudicial, we apply the four-part balancing test set forth by the United States Supreme Court in *Barker v. Wingo*.[17] "The *Barker* test weighs both the conduct of the prosecution and the defendant and 'compels courts to approach speedy trial cases on an *ad hoc* basis.'"[18] The *Barker* Court held that courts should assess four factors in determining whether a particular defendant has been deprived of the right to a speedy trial: (1) the

[15]*Middlebrook v. State*, 802 A.2d 268, 274 (Del. 2002).
[16] *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).
[17] *Barker*, 407 U.S. at 530.
[18] *Middlebrook*, 802 A.2d at 273 (quoting *Barker*, 407 U.S. at 530).

8

length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant.[19]

(14) Here, we find that the delay between Service's arrest and trial is sufficient to trigger a presumption of prejudice. In determining whether the defendant's right to a speedy trial had been violated in *Dabney v. State*, we made reference to the speedy trial guidelines for criminal trials in Superior Court, which call for all criminal cases to be tried or otherwise disposed of within one year.[20] In this case, the length of time between arrest and trial was over fourteen months. Therefore, the first *Barker* factor weighs in favor of Service, and necessitates our consideration of the remaining three *Barker* factors.

(15) The second *Barker* factor we must consider is the reason for delay. "Different weights are assigned to different reasons for delay. Thus, a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State], while a more neutral reason such as negligence or overcrowded courts should be weighted less heavily against the State."[21] A careful review of the record shows that much of the delay in holding Service's trial resulted from the

---

[19] *Barker*, 407 U.S. at 529.
[20] *Dabney v. State*, 953 A.2d 159, 165 (Del. 2008) (citing Supreme Court of Delaware Administrative Directive 130 (July 11, 2001): "At least 90% of all criminal cases shall be adjudicated as to guilt or innocence or otherwise disposed of within 120 days from the date of indictment/information, 98% within 180 days, and 100% within one year."
[21] *Middlebrook*, 802 A.2d at 274.

9

mutual requests of both parties, or from actions outside of the trial court's control. Additionally, the record does not reflect any manipulation or undue delay on the part of the State. Thus, we find this *Barker* factor to weigh in favor of the State.

(16) The third *Barker* factor, the defendant's assertion of his right to a speedy trial, is "of considerable significance in determining whether there has been a speedy [trial] violation."[22] The "'failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.'"[23] We have held that the specific words "right to a speedy trial" need not be used to preserve the defendant's right.[24] An implied assertion of the right to a speedy trial, such as a defendant's objecting to the continuance of a trial, is sufficient to preserve the right.[25] Such a vague assertion, however, weighs against the defendant.[26]

(17) In this case, Service failed to expressly or impliedly assert his right to a speedy trial until May 12, 2014. On December 17, Service's trial counsel made the trial court aware that Service did not want a continuance and wished to proceed to trial immediately. But the record shows that his trial counsel thereafter expressly concurred in the continuance because she needed additional time to prepare Service's

---

[22] *Harris v. State*, 956 A.2d 1273, 1277 (Del. 2008).
[23] *Middlebrook*, 802 A.2d at 275 (quoting *Barker*, 407 U.S. at 532).
[24] *Brodie,* 2009 WL 188855, at *5.
[25] *Id.* ("[H]ere, while [the defendant] did not use the term 'right to a speedy trial,' he did object to the further continuance of the trial, thus preserving his speedy trial argument.").
[26] *Id.*

10

defense. The trial court was entitled to rely upon defense counsel's request for more time so that she could provide the defendant with her best advice and help at trial. Thus, Service did not make any express or implied objection alleging a violation of his right to a speedy trial on December 17th. Rather, Service's first objection on speedy trial grounds was made on the eve of his May 13, 2014 trial, over 14 months after he was arrested. This factor weighs heavily in favor of the State.

(18) In considering the fourth *Barker* factor, we must examine the prejudice resulting to the defendant from the delay.[27] "In analyzing this factor, we consider the interests that the right to speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[28]

(19) Here, Service relies on only one of the preceding three factors. Specifically, he argues that the delay violated his interest in avoiding oppressive pretrial incarceration. Service contends that the inherent prejudice he suffered by remaining incarcerated while awaiting trial is enough to find that his right to a speedy trial has been violated.[29] Significantly, however, from February 2013 to May 2014,

---

[27] *Id.* at *4.

[28] *Weber v. State*, 971 A.2d 135, 162 (Del. 2009) (citing *Harris v. State*, 956 A.2d 1273, 1278 (Del. 2008)).

[29] *See Dabney v. State*, 953 A.2d at 168 ("The speedy guidelines are especially important where, as here, the defendant is incarcerated. Being incarcerated is inherently prejudicial.").

Service was being held on two sets of charges stemming from two separate cases, the instant case and the Firearms Case. As a result, if Service had gone to trial and been acquitted in the instant case, he would have remained incarcerated on the charges stemming from the Firearms Case. Thus, the prejudice shown by Service is minimal.

(20) After carefully balancing the *Barker* factors, we conclude that Service's right to a speedy trial has not been violated. Much of the delay in this case is attributable to mutual requests for continuances and the withdrawal of defense counsel. Moreover, Service has failed to show that he was substantially prejudiced by the delay resulting from the State's discovery violation.

(21) Service's final argument is that the trial court erred by failing to dismiss the charges against him for unnecessary delay in bringing him to trial under Superior Court Criminal Rule 48(b). Rule 48(b) provides that "[i]f there is unnecessary delay . . . in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."[30] "The underlying purpose of Superior Court Criminal Rule 48(b) is well established. The Rule, derived from the Federal Rules of Criminal Procedure 48(b), is a 'codification of the inherent power of a court to dismiss a case for want of prosecution.'"[31] "The breadth of a trial court's authority to dismiss under Rule 48(b) is equally well established as exceeding the constraints or limitations of the 'Speedy

---

[30] Super. Ct. Crim. R. 48(b).
[31] *State v. McElroy*, 561 A.2d 154, 156 (Del. 1989) (quoting *Fischer*, 285 A.2d at 418-19 n. 3).

Trial Clause of the Sixth Amendment.'"[32]

(22) In *State v. McElroy*, we construed Rule 48(b) as follows:

[F]or a criminal indictment to be dismissed under Rule 48 for "unnecessary delay," the delay, unless extraordinary, *i.e.*, of constitutional dimensions, must, as a general rule, first be attributable to the prosecution and second, such delay must be established to have had "a prejudicial effect upon defendant" beyond that normally associated with a criminal justice system necessarily strained by a burgeoning case load.[33]

(23) "The first criteria for dismissal under Rule 48(b), is that the unnecessary delay must be attributable to the State, as prosecutor."[34] As discussed, the delay in this case is attributable to both Service and the State. In fact, the only delay traceable solely to the State came when the Superior Court ordered Service's trial in the Drug Dealing Case, set for December 10, to be rescheduled for December 17 at the State's request. The remaining delays resulted from the actions of both parties or Service alone.

(24) "The second criteria established by this Court, as a condition precedent to

---

[32] *Id.*

[33] *Id.* at 155-56.

[34] *State v. Harris*, 616 A.2d 288, 291 (Del. 1992) (citing *McElroy*, 561 A.2d at 156). We have addressed a number of instances in which delay is attributable solely to the State. *See State v. Budd Metal Co. Inc.*, 447 A.2d 1186 (Del. 1982) (affirming dismissal of an indictment for the State's unnecessary delay in bringing defendant to trial); *State v. Glaindez*, 346 A.2d 156 (Del. 1975) (affirming the Superior Court's dismissal of an indictment where the State failed timely to advise the court that it could not locate its prosecuting witness and because the State allowed the prosecution to lie dormant for seven and a half months); *Fischer*, 285 A.2d at 417 (affirming the Superior Court's dismissal of indictments where the State delayed prosecution and switched cases unilaterally from Municipal Court to the Superior Court).

a dismissal for unnecessary delay, requires a finding that 'the delay has been found to work some definable or measurable prejudice to the defendant.'"[35]  Here, Service broadly argues that the State's failure to produce the laboratory reports by the required date under the scheduling order caused unnecessary delay and was thus inherently prejudicial.  We disagree.  The record reflects that Service suffered no definable or measurable prejudice.  His conclusory and unsupported allegations of prejudice are insufficient to establish actual prejudice for the purposes of Rule 48(b).  As such, we find his argument to be without merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/ James T. Vaughn Jr.
Justice

---

[35] *Id.* (quoting *McElroy*, 561 A.2d at 157); *see also Fischer*, 285 A.2d at 419 ("We agree with the Court below in its conclusion that other types of prejudice may be sufficient to move the exercise of its discretion under Rule 48(b)."); *Budd Metal Co. Inc.*, 447 A.2d at 1188 ("Nor is prejudice in the traditional sense required for the Superior Court to exercise its broad discretion under rule 48(b)."); *Hughey v. State*, 522 A.2d at 335, 340 n. 10 (Del. 1987) (quoting *State v. Sharon H.*, 429 A.2d 1321, 1325 (Del. Super. 1981) ("[S]ome showing of prejudice . . . is needed to justify the exercise of the Court's discretion in favor of a defendant to dismiss.").

14