# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
v. )
)
WILLIAM BROWN ) ID# 1108002188
EARL HARRIS ) ID# 1108002195
)
Defendants. )

Date Submitted: May 24, 2016
Date Decided: June 2, 2016
Date Modified: June 9, 2016[1]

*Upon Defendants' Motions to Dismiss Counts III and IV of the Indictment*:
**DENIED.**

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, DE, and Cleon Cauley, Esquire, The Cauley Firm, Wilmington, DE. Attorneys for Defendant Earl Harris.

John S. Malik, Esquire, Attorney at Law, Wilmington, DE, and Christopher S. Koyste, Esquire, Law Office of Christopher S. Koyste, LLC, Wilmington, DE. Attorneys for Defendant William Brown.

Steven P. Wood, Deputy Attorney General, and James J. Kriner, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE. Attorneys for the State.

**Jurden, P.J.**

---

[1] This modified opinion does not change the Court's decision to deny Defendants' Motions to Dismiss Counts III and IV of the Indictment. *See infra* notes 31, 35.

# I. INTRODUCTION AND PROCEDURAL HISTORY

On July 2, 2012, Defendants William Brown and Earl Harris were indicted for First Degree Murder (Count I), two counts of Felony Murder First Degree punishable by death (Counts III & IV), and ten other charges.[2] In February 2016, Defendants filed Motions to Dismiss Counts II–XIII of the indictment based on the statute of limitations.[3]

The State did not oppose dismissal of Counts II and V–XIII, but opposed dismissal of Counts III and IV, which allege Felony Murder First Degree in violation of 11 *Del. C.* § 636(a)(2).[4] On March 14, 2016, the Court issued an order granting the Motions with respect to Counts II and V–XIII, and denying Defendants' Motion to Dismiss Counts III and IV.[5] The Court issued an Amended Order on March 15, 2016, amending the order with respect to Counts III and IV, deferring decision pending receipt of Defendant Harris' reply.[6]

---

[2] Conspiracy First Degree relating to Count I (Count II), Burglary First Degree (Count V), Aggravated Act of Intimidation (Count VI), Conspiracy Second Degree relating to Count VI (Count VII), Arson in the Second Degree (Count VIII), Conspiracy Second Degree relating to Count VIII (Count IX), Arson in the Third Degree (Count X), Conspiracy Second Degree relating to Count X (Count XI), Theft of a Motor Vehicle (Count XII), and Conspiracy Second Degree relating to Count XII (Count XIII).

[3] State v. William Brown, ID # 1108002188 ("Brown") D.I. 42; State v. Earl Harris, ID # 1108002195 ("Harris") D.I. 45.

[4] Brown 52; Harris 73.

[5] Brown D.I. 55; Harris D.I. 60.

[6] Brown D.I. 56; Harris D.I. 61. Defendant Harris sought and received permission to reply to the State's response. Before receiving Defendant Harris' reply, the Court erroneously issued the March 14, 2016 Order. Hence, the issuance of the Amended Order. Defendant Harris filed a reply memorandum on March 18, 2016, which was subsequently joined by Defendant Brown. Harris D.I. 63; Brown D.I. 68. The State moved to strike the Due Process and Speedy Trial

Defendant Harris filed a reply memorandum on March 18, 2016, which was subsequently joined by Defendant Brown. In the reply, Defendants raise for the first time Speedy Trial and Due Process claims based upon the Sixth Amendment to the United States Constitution, Article I, § 7 of the Delaware Constitution, and Superior Court Criminal Rule 48(b).

For the following reasons, Defendants' Motion to Dismiss Counts III and IV of the Indictment is **DENIED.**

## II. BACKGROUND

On May 17, 2005, Angelo Panaccione's ("Mr. Panaccione") home in New Castle County, Delaware, was burglarized. Following an investigation by the New Castle County Police Department, Defendant William Brown ("Brown") was arrested and charged with Burglary Second Degree, Felony Theft, and Criminal Mischief. The case was scheduled for trial in this Court on November 22, 2005. In the early morning hours of November 22, 2005, just a few hours before Mr. Panaccione was scheduled to appear in court as a witness against Defendant Brown, Mr. Panaccione was murdered.

After a lengthy investigation, on April 3, 2006, Brown and Defendant Earl Harris ("Harris") were charged with Burglary Second Degree, Felony Theft, and

---

arguments contained in Defendants' reply because the Motions to Dismiss were based solely upon a claim that Counts II–XIII of the indictment were time-barred by the relevant statute of limitations. Harris D.I. 65. The Court will consider the merits of Defendants' Due Process and Speedy Trial claims because the Court amended the March 14, 2016 Order and deferred decision on Counts III and IV pending receipt of the reply.

3

Conspiracy Second Degree in connection with the events that occurred at Mr. Panaccione's home the morning of the murder (the "Burglary Second Case"). On May 9, 2006, Defendants were taken into custody on those charges and released two days later after posting secured bail. On March 1, 2007, the State dismissed the Burglary Second Case against both Defendants.

On July 2, 2012, Defendants were indicted for Mr. Panaccione's murder. At the time of the indictment, Brown was incarcerated in a Federal Correctional Institution in Maryland with an anticipated release date of August 2016, and Harris was incarcerated in New Jersey with an anticipated release date of August 2022.[7]

## III. ANALYSIS

### A. Alleged Speedy Trial Violation

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 7 of the Delaware Constitution. In *Barker v. Wingo*, the United States Supreme Court adopted a balancing test to determine whether a defendant's right to a speedy trial has been violated.[8] Under *Barker*, the Court must weigh the conduct of the prosecution and the defendant by considering four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the

---

[7] Brown D.I. 28; Harris D.I. 30.
[8] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

4

defendant.[9] No single factor is conclusive, "[r]ather they 'are related factors and must be considered together with such other circumstances as may be relevant.'"[10]

## 1. Length of Delay

"The right to a speedy trial attaches as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first."[11] In this case, Defendants claim that the length of delay is eight years—beginning in 2007 when the State dismissed the Burglary Second Case. But this is not correct. Defendants were indicted for Murder First Degree and Felony Murder First Degree (the only remaining charges from the indictment) on July 2, 2012. Thus, the length of delay for the charges at issue is approximately three years and ten months.

Unless the delay between the arrest or indictment and the trial is "lengthy enough to be presumptively prejudicial, there is no need to inquire into the remaining factors."[12] The length of delay "is necessarily dependent upon the peculiar circumstances of the case,"[13] and "[a] longer period of delay can be

---

[9] *Id.*

[10] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002) (quoting *Barker*, 407 U.S. at 533); *State v. Lewis*, 2002 WL 1335304, at *10 (Del. Super. June 17, 2002) ("[T]he facts of the individual case are determinative on the issue of whether a violation of an accused's speedy trial rights has occurred.").

[11] *Id.*

[12] *Hicks v. State*, 2011 WL 2937393, at *2 (Del. 2011); *Barker*, 407 U.S. at 530; *Middlebrook*, 802 A.2d at 273–74.

[13] *Barker*, 407 U.S. at 530–31; *Middlebrook*, 802 A.2d at 273–74.

tolerated for serious, complex charges, such as murder in the first degree."[14] The Delaware Supreme Court has held that, "if the delay between arrest or indictment and trial exceeds one year, the Court generally should consider the other *Barker* factors."[15] Consequently, the Court will conduct a full *Barker* analysis.

## 2. Reason for Delay

"Different weights are assigned to different reasons for the delay."[16] The Court must look at the conduct of the prosecution, defendants, and the particular circumstances of the case. For example, "[a] deliberate attempt to delay the trial in order to hamper the defense" will weigh heavily against the State.[17] However, "a valid reason, such as a missing witness, may justify appropriate delay and will not weigh against the State."[18]

As noted above, Defendants were indicted on July 2, 2012. On September 27, 2012, the State sent a letter to the Court informing the then-assigned judge[19] that both Defendants were incarcerated in other jurisdictions, and the State suggested that counsel should be appointed for each Defendant for the purposes of

---

[14] *Skinner v. State*, 575 A.2d 1108, 1116 (Del. 1990); *Barker*, 407 U.S. at 531 ("To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

[15] *Cooper v. State*, 2011 WL 6039613, at *7 (Del. 2011) (citing *Skinner*, 575 A.2d at 1116 ("[T]he State concedes that the period of [approximately one year between arrest and trial] is facially sufficient to provoke inquiry into the remaining factors.")).

[16] *Middlebrook*, 802 A.2d at 274.

[17] *Barker*, 407 U.S. at 531.

[18] *Middlebrook*, 802 A.2d at 274; *Skinner*, 575 A.2d at 1116.

[19] On February 4, 2015, this case was reassigned to the current judge for all purposes until final disposition. Brown D.I. 20; Harris D.I. 16.

discussing scheduling and procedures to secure the Defendants return to Delaware for trial.[20] The Court agreed, and notified the Public Defender's Office ("PDO") and the Office of Conflict Counsel ("OCC") that the State's request for appointment of counsel was granted.[21] On July 15, 2013, the State sent a letter to the Court (copying the PDO) informing the Court that the Defendants were still incarcerated out-of-state and that the PDO had not yet assigned counsel.[22] The State further advised it was "desirous of bringing the matter to trial in a timely fashion."[24] The Court responded on July 26, 2013, stating that counsel needed to be assigned before a scheduling conference could occur.[25] The Court copied the PDO and OCC on this communication.[26] That same day, the PDO responded, stating it could not conduct its conflict evaluation until the Defendants were in the custody of the Delaware Department of Correction and the State provided a witness list to the PDO.[27]

In a communication to the Court dated August 21, 2013, the State pointed out that under *Bruton*[28] the PDO could not represent both Defendants, and therefore, suggested that it would be most expedient to assign a conflict attorney to

---

[20] Brown D.I. 8; Harris D.I. 9.
[21] Brown D.I. 9; Harris D.I. 10.
[22] Brown D.I. 10; Harris D.I. 11.
[24] Brown D.I. 10; Harris D.I. 11
[25] Brown D.I. 65; Harris D.I. 69.
[26] Brown D.I. 65; Harris D.I. 69.
[27] Brown D.I. 65; Harris D.I. 69.
[28] *Bruton v. United States*, 391 U.S. 123 (1968).

represent one of the Defendants (rather than waiting until Defendants were returned to Delaware).[29] The PDO responded that it was still unable to conduct its conflict evaluation (because the Defendants were not in Delaware), and explained "[f]or the PDO to attend an office conference and represent the interests of the individuals who have not sought our services would be an ethical breach."[30]

The State returned Brown to Delaware on August 13, 2014, and the PDO representation was effective August 18, 2014.[31] On September 26, 2014, the State sent a letter to the PDO informing the PDO of a potential conflict with its representation of Brown,[32] describing in detail seven witnesses[33] that would be called in the State's case-in-chief that the PDO had previously represented.[34] At an

---

[29] Brown D.I. 65; Harris D.I. 69.

[30] Brown D.I. 65; Harris D.I. 69.

[31] Brown D.I. 14, 66. There was a clerical error in the original opinion with respect to the date Brown was returned to Delaware. This opinion correctly reflects that Brown was returned to Delaware on August 13, 2014.

[32] Brown D.I. 16 ("We wish to inform you of a potential conflict that may exist in your office's representation of William J. Brown in the above-captioned case. Our review of the criminal histories of the State's witnesses has disclosed that a number of them have previously been represented by various attorneys that are, or were, in the employ of the Office of the Public Defender.").

[33] Id. For example, "[o]ne of these witnesses, described herein as 'C1,' is a person to whom your client confessed. C1 has a lengthy criminal history. C1 was represented by attorneys in your office in separate felony cases in 2006, 2005, 1999, 1998 (two cases), 1997 (two cases), 1995, and 1993." Id.

[34] Id. A relevant excerpt from the letter is as follows:

> By way of background, we should note that the investigation that preceded the indictment in this case was lengthy and complex. The murder that led to the instant indictment occurred in November of 2005. Dozens of civilian witnesses were interviewed over the intervening years. We expect that many of these witnesses will be called in the State's case-in-chief. Because the indictment alleges that your client committed murder to prevent a victim-witness from

8

October 31, 2014, office conference, the PDO informed the Court and the State that it had no good-faith basis to declare a conflict because the State was unwilling to provide the names of the witnesses.[35] Consequently, the Court declared that the PDO had a conflict in Brown's case based on the State's representation that there were at least seven significant witnesses who had been represented by the PDO on multiple occasions.[36] Pursuant to the Court's October 31, 2014 order, the PDO declared a conflict of interest in Brown's case that same day, and the OCC assigned conflict counsel to Brown.[37] The Court signed an order appointing that counsel on November 13, 2014.[38]

Harris was returned to Delaware on November 14, 2014.[39] The OCC assigned Harris conflict counsel, and the Court appointed that counsel on December 5, 2014.[40]

---

testifying against him (in a then-pending Burglary Second case), we are unwilling to disclose the names of our witnesses. Instead, we have summarized the information that we trust will help you begin the process of determining whether a conflict, in fact, exists.

[35] The transcript of the October 31, 2014 office conference held by the then-assigned judge was not in the Court's file at the time the original opinion was issued. Having received the official transcript of that office conference, the Court has modified its opinion to include additional details relating to the PDO's conflict of interest in Brown's case. Brown D.I. 72 (October 31, 2014 Office Conference Transcript). Brown D.I. 71 & Harris D.I 76 (June 3, 2006 Letter to Counsel)

[36] Brown D.I. 72.

[37] Brown D.I. 18.

[38] Brown D.I. 18.

[39] Harris D.I. 12, 71.

[40] Harris D.I. 15. The Court is unable to ascertain from the record when the PDO determined it had a conflict of interest in Harris' case.

While the State could have been more expeditious in seeking Defendants' extradition, "[i]t is well established that 'a defendant who prolongs a matter can not then blame the result solely on the acts or omissions of the prosecution.'"[42] At the time of indictment, a Rule 9 Warrant and Authorization for Extradition was issued for each Defendant.[43] Although Defendants knew about the pending charges in Delaware since 2012, at no point did Defendants request to be returned to Delaware to stand trial.

Moreover, pursuant to 11 *Del. C.* § 2542, the Uniform Agreement on Detainers ("UAD"), once the State indicts a prisoner who is incarcerated in another state and against whom a detainer is lodged, a prisoner may request extradition for purposes of trial.[44] According to the State, a detainer for Harris was lodged with the Department of Corrections for the State of New Jersey on April 3, 2013, and a detainer for Brown was lodged with the Federal Bureau of Prisons on May 7, 2014.[45]

Defendants did not request to be returned to Delaware for trial pursuant to the UAD, which would have obligated the State to bring them to trial within 180

---

[42] *Butler v. State*, 2009 WL 1387640, at * 3 (Del. 2009) (quoting *State v. Key*, 463 A.2d 633, 637 (Del.1983)).
[43] Brown D.I. 2, 3; Harris D.I. 2, 3.
[44] *Bruce v. State*, 781 A.2d 544, 548 (Del. 2001), *holding modified by Baker v. State*, 906 A.2d 139 (Del. 2006); *State v. Ringgold*, 2003 WL 1903768, at *2 (Del. Super. Apr. 17, 2003).
[45] Brown D.I. 66; Harris D.I. 71.

days of return.[46] Instead, the State undertook a unilateral initiative to return Brown to Delaware on August 13, 2014, and Harris to Delaware on November 14, 2014.[47]

The Court finds that the second *Barker* factor—the reason for delay—weighs against both parties.

### 3. Defendants' Assertion of the Right to a Speedy Trial

"If and when a defendant asserts his rights are factors of considerable significance in determining whether there has been a speedy trial violation," and a defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."[48] This factor "implicitly puts on the defendant some responsibility to call attention to what he views as an unfair postponement."[49]

Defendants were indicted in July 2012 and did not raise a speedy trial claim until March 18, 2016, almost a year and a half after returning to Delaware. Defendants' nearly four year acquiescence to the delay and silence until this point are significant.[50] The third factor weighs heavily against Defendants.

---

[46] 11 *Del. C.* § 2542.

[47] Brown D.I. 14, 66; Harris D.I. 12, 71.

[48] *Middlebrook*, 802 A.2d at 275.

[49] *Page v. State*, 934 A.2d 891, 897–98 (Del. 2007) (internal quotations omitted).

[50] *Page*, 934 A.2d at 897–98 ("While the failure to demand a speedy trial does not bar a defendant from raising the issue, Page's apparent acquiescence to the delays and his silence until this appeal are significant.").

11

## 4. Prejudice to the Defendants

The fourth *Barker* factor involves an examination into the prejudice to the Defendants resulting from the delay. The Court weighs the prejudice to the Defendants in light of the interests that the speedy trial right aims to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.[51]

First, a defendant's constitutional right to a speedy trial is intended to protect an unjust, lengthy pretrial incarceration.[52] As the United States Supreme Court explained in *Barker*, "time spent in jail awaiting trial by one presumed innocent until proven guilty often means loss of a job, disrupts family life, and enforces idleness."[53] With respect to Harris, this interest is diminished because Harris is a sentenced inmate who is not eligible for release until 2022.[54] With respect to Brown, he asserts no independent basis for his speedy trial claim. However, the Court notes that Brown is also a sentenced inmate with an anticipated release date of August 2016.

---

[51] *Barker*, 407 U.S. at 532; *Middlebrook*, 802 A.2d at 276.
[52] *Middlebrook*, 802 A.2d at 276.
[53] *Barker*, 407 U.S. at 532.
[54] *Butler*, 2009 WL 1387640, at *3 ("Those interests are diminished where, as here, the defendant has already been convicted. Having already been convicted, Butler's only applicable interest is minimizing his anxiety and concern.").

Second, the right to a speedy trial is designed to minimize the anxiety of the accused. Even if a defendant is not incarcerated prior to trial, when there is a delay, a defendant is presumed prejudiced to at least some extent "by living under a cloud of anxiety."[55] Harris argues that the anxiety he has had "hanging over his head since 2012—on a case that was dismissed in 2006—is palpable."[56] Defendants were indicted for First Degree Murder and Felony Murder First Degree in July 2012, *not 2006*. Neither Defendant has alleged that they suffered "excessive concern or anxiety" based on any delay since the 2012 *murder indictment*.[57] The inherent anxiety, without more, does not rise to the level of cognizable prejudice.[58] Accordingly, this interest does not weigh heavily in the Defendants' favor.

Finally, the most serious interest that the Sixth Amendment safeguards is limiting the possibility that the defense will be impaired because "the inability of a defendant [to] adequately prepare his case skews the fairness of the entire system."[59] Defendants make no specific allegations of this type of prejudice. Rather, Defendants' argument relates to the delay from the 2007 dismissal of the

---

[55] *Middlebrook*, 802 A.2d at 277; *Barker*, 407 U.S. at 534 ("Of course, Barker was prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety.").
[56] Harris D.I. 63.
[57] *Cooper*, 32 A.3d 988 at *8. "(The second interest does not weigh in Cooper's favor, as Cooper has not alleged excessive concern or anxiety.").
[58] *Butler*, 2009 WL 1387640, at *3.
[59] *Barker*, 407 U.S. at 532. ("If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.").

Burglary Second Case until the 2012 murder indictment and Defendants' dissatisfaction with the state of discovery relating to that time period. Defendants allege that they have no information about witnesses who may have implicated Defendants in a federal grand jury proceeding. Yet, Defendants have received all of the material to which they are entitled to at this time pursuant to Superior Court Criminal Rule 16. In fact, the State has provided additional discovery under a Protective Order that would not otherwise be discoverable under Rule 16.[60] Accordingly, Defendants' claim that their defense has been impaired is unsubstantiated.

## 5. Balancing of *Barker* Factors

In carefully balancing the *Barker* factors, and taking into account all relevant factual circumstances of this particular case, the Court finds that Defendants' right to a speedy trial has not been violated. This is a capital murder case, involving a lengthy investigation conducted by the New Castle County Police Department, the Federal Bureau of Investigation, and the United States Department of Justice. The July 2, 2012 indictment involved two Defendants, both incarcerated in different States at the time, with thirteen charges against each Defendant, including First Degree Murder and two counts of Felony Murder First Degree.

---

[60] Brown D.I. 53, Motion to Compel Hearing Transcript at 14:4–16:19; Harris D.I. 57.

14

The length of delay and reason for delay tip slightly in Defendants' favor because there has been a more than a three year delay since the indictment. However, Defendants' nearly four year acquiescence and silence as to the delay weighs heavily against them. Defendants never requested return to Delaware to stand trial and did not raise a speedy trial claim until March 18, 2016. Further, there is no evidence that the State intentionally delayed trial. Rather, the State undertook multiple unilateral efforts to bring the matter to trial, including returning Defendants to Delaware.

Finally, the fourth factor weighs heavily in favor of the State because Defendants have not established (beyond inherent prejudice) that they have been prejudiced by the delay.

Accordingly, Defendants' Motions to Dismiss the indictment for a violation of their right to a speedy trial must be denied.

## B. Alleged Due Process Violation

"The dismissal of an indictment for preindictment delay under Superior Court Criminal Rule 48(b) and the due process clauses of both the federal and state constitutions is warranted only if the defendant can establish actual prejudice from

15

the State's delay."[61]  The delay must be "found to work some definable or measurable prejudice to the defendant."[62]

Defendants argue that the State's delay in re-charging Defendants after dismissing the Burglary Second Case in 2007 violates their right to due process. According to Defendants, they cannot effectively defend themselves against the felony murder charges because the State has failed to provide discovery explaining why the State dismissed the Second Degree Burglary Case in 2007, only to indict the Defendants in 2012 for felony murder.  Specifically, Defendants allege that they have no information about witnesses who may have implicated Defendants in federal grand jury proceedings.

The State maintains that Defendants have failed to allege any measurable prejudice as a consequence of the delay.  Rather, the State has represented to the Court that: (1) Defendants have received all of the material to which they are entitled to at this time pursuant to Superior Court Criminal Rule 16, and (2) the State has provided additional discovery under the February 22, 2016 Protective Order that would not otherwise be discoverable under Rule 16.[63]

The Defendants' perceived prejudice relates to dissatisfaction with the state of discovery, which is governed by Superior Court Criminal Rule 16 and is still

---

[61] *Crippen v. State*, 1997 WL 398919, at *2 (Del. 1997).
[62] *Service v. State*, 2015 WL 1234489, at *6 (Del. 2015).
[63] Brown D.I. 53; Harris D.I. 57.

16

ongoing. Accordingly, Defendants conclusory and unsupported allegations of prejudice are insufficient to establish actual prejudice under Rule 48(b).

## C. Statute of Limitations

As noted above, on February 2, 2016, Defendants filed Motions to Dismiss Counts II–XIII of the indictment based on the statute of limitations. The State did not oppose dismissal of Counts II and V–XIII, but opposed dismissal of Counts III and IV, which allege Felony Murder First Degree in violation of 11 *Del. C.* § 636(a)(2).[65]

In their Motions to Dismiss, Defendants argue that because the felony murder charges (Count III and IV), rely upon and incorporate by reference charges which are barred by the statute of limitations, Counts III and IV are likewise time-barred. Defendants fail to cite any authority in support of this claim.

Pursuant to 11 *Del. C.* § 205(a), prosecution for murder or any class A felony may be commenced at any time. Accordingly, Counts III and IV (Felony Murder First Degree) are not barred by the statute of limitations.

## IV. CONCLUSION

Counts III and IV (Felony Murder First Degree) are not barred by the statute of limitations and, after carefully considering the Defendants' Due Process and

---

[65] Brown D.I. 52; Harris D.I. 73. On March 14, 2016, the Court issued an order granting the Motions to Dismiss with respect to Counts II and V–XIII. In an Amended Order, the Court deferred decision with respect to Counts III and IV pending receipt of Defendant Harris' reply.

Speedy Trial claims, the Court finds no violation of those rights. Therefore, Defendants' Motions to Dismiss Counts III and IV of the Indictment are **DENIED.**

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge