IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| V. | ) Case Nos.: 1906013925 & 1906013859 |
| | ) |
| VICTOR DUONNOLO, | ) |
| | ) |
| Defendant. | ) |

Submitted: May 4, 2020
Decided: May 13, 2020

## ORDER

*On Defendant's Motion to Dismiss for Lack of Speedy Trial.*
**DENIED.**

Before the Court is a motion filed by defendant Victor Duonnolo to dismiss the charges due to a violation of his right to a speedy trial. In the alternative, defendant seeks a reduction of his bond so that he might be released pending trial. This Order will deny the motion to dismiss on speedy trial grounds. The bail question is separate from the motion to dismiss and will be addressed separately. The Court makes the following findings:

1.      Defendant was arrested in June, 2019 and charged with two counts of residential burglary and related offenses. The case proceeded uneventfully towards a scheduled December, 2019 trial date with the usual pretrial process.

1

2. Immediately before the first scheduled trial date, the State requested a continuance of the trial date because the State intended to reindict, add a codefendant and new conspiracy counts to the indictment. The defendant, through his counsel, was consulted regarding the continuance request and did not object.

3. The new indictment was scheduled for trial on March 31, 2020. As defendant correctly notes in his motion, by mid-March, 2020, the Coronavirus had hit our shores and was overtaking hospitals and gripping the nation with both illness and fear. The President of the United States declared a State of Emergency,[1] the Governor closed all public schools and on March 13, 2020, the Chief Justice of the Delaware Supreme Court declared a judicial emergency, closing the courthouse to all but essential personnel and foreclosing the availability of jury trials.[2] Notably, the Chief Justice specifically ordered that "all time requirements under the Speedy Trial Guidelines are hereby tolled."[3]

4. On April 14, the Chief Justice extended the declaration of emergency for an additional 30 days until May 15, 2020.[4] The Superior Court is closed except

---

[1] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak.
[2] ORDER DECLARING A JUDICIAL EMERGENCY, Seitz, C.J. (March 13, 2020)
[3] Id., at ¶ 4
[4] ADMINISTRATIVE ORDER NO. 4 EXTENSION OF JUDICIAL EMERGENCY, Seitz, C.J. (April 14, 2020)

for essential personnel. Limited Court proceedings are presently being conducted using remote access. Those limited proceedings do not include trials.[5]

5.     None of this is disputed by the defendant. Nonetheless, defendant argues that the failure to bring him to trial to date constitutes a violation of his right to a speedy trial.

6.     Delaware does not have a statutory right of speedy trial. But there is a constitutional right to speedy trial embedded in the Sixth Amendment to the U.S. Constitution and a parallel guarantee in the Delaware Constitution, Article 1, section 7. The U.S. Congress has passed a Speedy Trial Act, 18 U.S.C. §§3161-3174, but the Delaware General Assembly has not done so. The Delaware Supreme Court has, however, issued an Administrative Directive calling on Superior Court to adjudicate 90% of criminal cases within 120 days of indictment and 100% within one year.[6] That administrative directive, however, creates no rights independent of the constitutional right to a speedy trial.

7.     Delaware Courts have adopted the U.S. Supreme Court's analysis of constitutional speedy trial claims under the rubric established in the case of *Barker*

---

[5] *See* STANDING ORDER No. 2 CONCERNING COVID-19 PRECAUTIONARY MEASURES, Jurden, P.J. (March 16, 2020) and STANDING ORDER No. 6 CONCERNING COVID-19 PRECAUTIONARY MEASURES, Jurden, P.J. (April 15, 2020)(extending closure an additional 30 days)
[6] Delaware Supreme Court Administrative Directive No. 130 (July 11, 2001)

*v. Wingo.*[7] In that case, the U.S. Supreme Court held that constitutional speedy trial issues must examine 1) the length of the delay, 2) the reasons for the delay, 3) the defendant's assertion of his right to a speedy trial and 4) any prejudice to the accused.

8. The length of the delay in this case is from June 2019 to May 2020. The Delaware Supreme Court has held that a delay in trial of less than one year does not trigger further inquiry into the remaining *Barker v. Wingo* factors.[8] The delay in this case, being short of one year, does not require further review of the *Barker v. Wingo* factors. But given the likelihood that Defendant's trial will not take place within one year, the Court will review the remaining factors.

9. The second factor is the reason for the delay. Here, there were two: one occasioned by the State's reindictment of the defendant – a delay to which he assented – and a second caused directly by the outbreak of the coronavirus, which created a worldwide pandemic and has brought the entire country to a virtual standstill. This latter delay is ongoing as even now, the Courthouse remains essentially closed and subject to the emergencies declared by the Chief Justice and the Governor.

10. In addition to the constitutional provision regarding the right a speedy trial, the U.S. Congress enacted the Speedy Trial Act, requiring that criminal trials

---

[7] 407 U.S. 514 (1972)
[8] *Cooper v. State*, 32 A.3d 958 (table), 2011 WL 6039613 (Del. Supr. Dec. 5, 2011). *See also Skinner v. State*, 575 A.2d 1108, 1116 (Del. 1990).

take place within specific time parameters. Those times can expand, however, when the time is "excludable" from the computations. Every federal court that has dealt with a speedy trial argument in light of the coronavirus pandemic has held that the delay caused by the closing of courthouses and unavailability of juries is "excludable time" for purposes of the federal Speedy Trial Act.[9]

11. The defense has made no argument that the delay here should not likewise be considered excluded from a speedy trial analysis. Indeed, about all he can say is that the courthouse is closed and his new trial date is uncertain. But simple uncertainty is anathema to a proper legal analysis of his claim. Perhaps the government will close the courthouse permanently and leave him imprisoned without a day in court forever. The Court cannot speculate on that possibility and reach a conclusion about his present, real world status. Presently, his real world status is that he is held in default of bail and his trial has been put on hold for a couple of months while the government acts to ensure the public's health. That is a completely reasonable response to a world-wide pandemic that has killed hundreds

---

[9] *E.g., United States v. Kemprud*, 2020 WL 2128585 (May 5, 2020, E.D. CA) (Time exclusion granted in light of the emergence of coronavirus and the dangers to the public). *Accord United States v. Rubaba*, 2020 WL 1446910 (D. Kan. March 25, 2020). *United States v. Lynch*, 2020 WL 1492827 (M.D. Ala.) (finding that the ends of justice served by granting a continuance of this trial outweigh the interest of the public and the Defendant in a speedy trial). *Accord United States v. Hughes*, 2020 WL 1331027 (W.D. Wash, March 23, 2020).

5

of thousands and is transmitted through human contact. That point is so self-evident that the defendant does not suggest otherwise in his pleading.

12. The third factor considered under *Barker v. Wingo* is the assertion of the right to a speedy trial by the accused. Defendant has asserted his right in this pleading, filed after the courthouse was closed, but this was the first time he did so. Indeed, when the State requested a continuance of his January trial date in order to reindict him, he assented, albeit with the understanding that the new trial date would be in March. Because the reason for the delay in his trial is so compelling, the Court attaches little significance to the defendant's assertion of his right. The Supreme Court's Administrative Directive on speedy trial recognizes that society benefits from criminal adjudications that are prioritized and resolved quickly whenever possible regardless whether or when the defendant asserts the right.

13. The fourth *Barker v. Wingo* factor is prejudice to the accused. This factor has received some scrutiny in cases since *Barker v. Wingo*.[10] In *Middlebrook v. State*, the Delaware Supreme Court said that an analysis of prejudice under *Barker v. Wingo* must consider: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired."[11] In this case, the Defendant has not argued that

---

[10] *See, e.g., Doggett v. U.S.*, 505 U.S. 647, 656 (1992).
[11] *Middlebrook v. State*, 802 A.2d 268, 276 (Del. 2002)

his defense will be impaired or that he suffers from "anxiety and concern" although we may presume that incarceration generally is a cause for both. But the Court does not believe that the constitutional right to a speedy trial is the appropriate vehicle by which to litigate his conditions of confinement. On the other hand, incarceration itself is prejudicial and it would be unrealistic to minimize the prejudice that anyone suffers that is held in prison in default of bail pending trial. This is a prejudice suffered by all pretrial detainees and defendant has not made out a case that his particular prejudice is somehow unique.

14. The Court understands that Defendant would very much like his bail reduced and that he has concerns about the coronavirus. But the Court does not agree that these medical concerns constitute "prejudice" within the meaning of the term under the *Barker v. Wingo* standards.

Having found no basis to dismiss this matter pursuant to Defendant's motion to dismiss for lack of a speedy trial, that motion is **DENIED**.

**IT IS SO ORDERED**.

Judge Charles E. Butler

7