IN THE SUPREME COURT OF THE STATE OF DELAWARE

JOSHUA MCGRIFF, § 
 § No. 161, 2022
 Defendant Below, §
 Appellant, § Court Below—Superior Court
 § of the State of Delaware
 v. §
 § Cr. ID No. 2004002455 (N)
STATE OF DELAWARE, §
 §
 Appellee. §

Submitted: December 9, 2022
Decided: January 27, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>ORDER</u>

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) On July 21, 2021, a Superior Court jury found the appellant, Joshua McGriff, guilty of attempted second-degree robbery and second-degree conspiracy. The Superior Court sentenced McGriff to three years of Level V incarceration, suspended after one year for one year of Level III probation. This is McGriff's direct appeal.

(2) The evidence presented at trial established that, at approximately 11:30 p.m. on April 3, 2020, Shamir Shabazz stopped at a Bank of America drive-up ATM located on Fox Hunt Drive in Bear. As he was entering his PIN into the ATM, two

individuals approached his car. One individual came from the rear and started punching Shabazz in the chest. The other individual came from the front. Shabazz, who carried bear mace for safety reasons, sprayed the bear mace, and the individuals ran away.

(3)     Shabazz called the police, who arrived a few minutes later. He told the police that one of the individuals was a man and that the other individual could have been a man or woman. Shabazz testified that he did not get a good look at his assailants' faces, but both appeared to be African-American and were wearing hoodie sweatshirts. Shabazz did not know if any of the bear mace hit either of his assailants.

(4)     Corporal Gregory Gaffney of the Delaware State Police was called to the scene of the robbery. As he drove eastbound on Route 40 to the Bank of America ATM, he received a description of the suspects and was advised that the suspects were last seen heading toward Rickey Boulevard and Route 40. Gaffney saw someone who resembled the description of one of the suspects walking westbound on Route 40, made a U-turn, and stopped the person, McGriff, in a Dunkin' Donuts parking lot.

(5)     Gaffney advised McGriff that he was stopping him because he matched the description of a suspect (dark clothing with grey hooded sweatshirt pulled over the head) in a nearby robbery. McGriff, who was cooperative, told Gaffney that he

was heading to his girlfriend's house in Elkton, which was several miles away. Gaffney testified that McGriff did not appear to be out of breath or showing effects of pepper spray, like a runny nose or red eyes. The police did not have access to the ATM surveillance footage at that time so they let McGriff go after taking a photograph of him and his State-issued identification card.

(6) Detective Todd Dukes of the Delaware State Police obtained surveillance footage of the Bank of America ATM. He reviewed footage of the attempted robbery, which showed that the individual who approached Shabazz's car from the rear was wearing a dark jacket with a zipper on the left sleeve and a grey hooded sweatshirt pulled over his head. Dukes took still clips of the assailants from the video footage to create an "Attempt to Identify" flier. The flier was distributed to various agencies in an attempt to identify the robbery suspects. In response to the flier, Dukes received the photograph of McGriff taken by police the night of the robbery.

(7) Dukes interviewed McGriff on April 22, 2020. During the interview, Dukes showed McGriff still images taken from the surveillance footage along with the photograph of McGriff taken the night of the robbery. As he looked at the still images, McGriff said "showing me this is pretty much like showing me that you got me" and "so I can't really say that, oh it's not me. Nah, man, it's me, but I don't

3

recall."[1]  The jury found McGriff guilty of attempted second-degree robbery and second-degree conspiracy.

(8)  On appeal, McGriff's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c).  Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues.  Counsel informed McGriff of the provisions of Rule 26(c) and provided McGriff with a copy of the motion to withdraw and the accompanying brief.

(9)  Counsel also informed McGriff of his right to identify any points he wished this Court to consider on appeal.  McGriff has raised points for this Court's consideration.  The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(10)  When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]  McGriff's arguments on appeal may be summarized as

---

[1] Trial Exhibit 8, 7:20-7:24, 7:33-7:39.
[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

follows: (i) his asserted right to a speedy trial was violated; (ii) the prosecutor violated *Brady v. Maryland*[3] by withholding inculpatory and exculpatory evidence; (iii) suggestive identification; (iv) there was insufficient evidence to support his convictions; and (v) ineffective assistance of counsel.

(11) We first address McGriff's claim of a speedy-trial violation. To determine if there is a speedy-trial violation, we use the four-factor balancing test set forth in *Barker v. Wingo*.[4] The four factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.[5] The factors are related and no one factor is conclusive.[6]

(12) A defendant's right to a speedy trial "attaches as soon as the defendant is accused of a crime through arrest or indictment whichever occurs first."[7] Unless the length of delay is determined to be "presumptively prejudicial," it is not necessary to consider the additional *Barker* factors.[8] This Court has held that if the delay between arrest or indictment and trial approaches one year, then the Court will generally consider the additional factors.[9]

---

[3] 373 U.S. 83 (1963)

[4] 407 U.S. 514 (1972). *See also Johnson v. State*, 305 A.2d 622, 623 (Del. 1973) (adopting *Barker* test)).

[5] *Barker*, 407 U.S. at 530.

[6] *Id.* at 533.

[7] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002).

[8] Id.

[9] *Cooper v. State*, 2011 WL 6039613, at *7 (Del. Dec. 5, 2011).

(13)  More than one year passed between McGriff's arrest on April 22, 2020 and trial on July 20, 2021.  McGriff fails, however, to acknowledge the reason for this delay.  For much of the time between McGriff's arrest  and trial, there was a judicial emergency in effect because of the COVID-19 pandemic.[10]  With the exception of a brief period between October 5, 2020 and November 16, 2020, jury trials were suspended.[11]  The Chief Justice's judicial emergency orders tolled the time requirements under the Speedy Trial Guidelines.[12]

(14)  McGriff also fails to identify any prejudice that he suffered from the delay.  He has not shown that the delay caused any impairment to his defense.  McGriff's right to a speedy trial was not violated.

(15)  McGriff did not raise his *Brady* claim below so we review for plain error.[13]  "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which

---

[10] Administrative Order No. 22 (June 29, 2021) (extending the judicial emergency until July 13, 2021); Order (Mar. 13, 2020) (declaring judicial emergency effective March 16, 2020).

[11] Administrative Order No. 19 (Apr. 30, 2021) (providing for resumption of jury trials on June 1, 2021); Administrative Order No. 13 (Nov. 16, 2020) (suspending jury trials); Administrative Order No. 10 (Sept. 4, 2020) (providing for resumption of jury trials on October 5, 2020); Administrative Order No. 3 (Mar. 22, 2020) (closing courthouses to public beginning on March 23, 2020).

[12] Administrative Order No. 22 (June 9, 2021) (tolling the time requirements under the Speedy Trial Guidelines until July 13, 2021); Order (Mar. 13, 2020) (tolling the time requirements under the Speedy Trial Guidelines).

[13] Supr. Ct. R. 8; *Weber v. State*, 38 A.3d 271, 276 (Del. Feb. 21, 2012).

clearly show manifest injustice."[14]  Under *Brady*, the State must disclose material exculpatory and impeachment evidence to the defense before trial.[15]  McGriff does not identify the exculpatory or impeachment evidence that he contends the State failed to disclose.  *Brady* does not apply to inculpatory evidence.[16]  There is no plain error.

(16)  McGriff did not raise his suggestive-identification claim below so we review for plain error.[17]  The record does not reflect that there was anything impermissibly suggestive in how Dukes identified McGriff as a suspect or showed McGriff his photograph from the night of the robbery and stills from the surveillance footage.  McGriff has not shown plain error.

(17)  McGriff did not move for a judgment of acquittal in the Superior Court, so we review his insufficient evidence claim for plain error.[18]  There is no plain error here as there was sufficient evidence to support McGriff's convictions for attempted second-degree robbery[19] and second-degree conspiracy.[20]  This evidence included

---

[14] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[15] 373 U.S. at 87.

[16] *Rose v. State*, 542 A.2d 1196, 1199 (Del. 1988).

[17] *See supra* n.13.

[18] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).

[19] A defendant is guilty of attempted second-degree robbery when he attempts  to take property of another person and uses or threatens the immediate use of force on that person with the intent to overcome resistance to the taking of the property.  11 *Del. C.* § 531; 11 *Del. C.* § 831(a).

[20] A defendant is guilty of second-degree conspiracy when he agrees with another person to commit a felony, the defendant or another person commits an overt act in furtherance of the conspiracy, and the defendant acted intentionally.  11 *Del. C.* § 512(a)(1).

Shabazz's testimony about two people who approached and assaulted him while he was at the ATM, the ATM surveillance footage, McGriff's presence in the area shortly after the crime occurred while wearing clothing similar to the clothing of one of the assailants in the surveillance footage, and McGriff's statements to the police when he was shown stills from the surveillance footage.

(18)  Finally, McGriff asserts multiple claims of ineffective assistance of counsel.  We have consistently held that we will not consider ineffective assistance of counsel claims for the first time on direct appeal, and decline to do so here.[21]

(19)  This Court has reviewed the record carefully and has concluded that McGriff's appeal is wholly without merit and devoid of any arguably appealable issues.  We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that McGriff could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[21] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).